## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
BRIAN WARREN,                 :
                              :
          Plaintiff,          :
                              :
v.                            :   Civil No. 3:09cv01616 (AWT)
                              :
CITY OF WATERBURY, et al.,    :
                              :
          Defendants.         :
-----------------------------x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Brian Warren ("Warren"), brings this action against defendants Sergeant Michael Ponzillo ("Ponzillo"), Detective David McKnight ("McKnight"), Detective Milford Hayes ("Hayes"), Lieutenant Gary Pelosi ("Pelosi"), Officer Leslie Lugo ("Lugo"), Officer Heather Varrone ("Varrone"), Sergeant Joseph Dews ("Dews"), Officer Ronald Tompkins ("Tompkins"), Sergeant Steven Pedbereznak ("Pedbereznak"), Officer Anthony Tito ("Tito"), Officer Anthony Tanganelli ("Tanganelli"), Officer Luis Hernandez ("Hernandez"), the City of Waterbury and Michael Gugliotti ("Gugliotti")[1] asserting claims for unlawful search and seizure, excessive force, denial of medical care, false

---

[1]Both sides discuss whether Sergeant Michael McKenna ("McKenna") is liable to the plaintiff.  However, McKenna has not been named as a defendant in this case.

arrest and imprisonment, assault and battery, negligent infliction of emotional distress, intentional infliction of emotional distress and municipal liability under 42 U.S.C. § 1983.  The defendants have moved for summary judgment. For the reasons set forth below, the motion for summary judgment is being granted in part and denied in part.

## I.    FACTUAL BACKGROUND

On the morning of September 13, 2007, Ponzillo, McKnight and Hayes were looking for an individual named Ambrose Easter ("Easter") who was wanted for several criminal offenses.  Some time late that morning, they came upon the plaintiff and Samuel Small ("Small"), who were walking home from a convenience store on Walnut Street in Waterbury, Connecticut.

The officers, who were in plain clothes and an unmarked police car, pulled over to the curb where the plaintiff and Small were walking and asked them where they were going. Small told the officers that they were on their way home from the convenience store.  The officers then showed the plaintiff and Small a picture of Easter and asked if they knew or had any information about Easter.  The plaintiff and Small said that they did not know Easter.

The officers then asked the plaintiff and Small for identification and asked the plaintiff how long he had lived at the address on his driver's license.  The plaintiff replied that he had lived there for almost five years and then asked if he and Small could leave.  Ponzillo began yelling at the plaintiff and asked him why he was so nervous.  Small stated that the plaintiff is "just a nervous person."

Ponzillo, McKnight and Hayes exited the vehicle and approached the plaintiff and Small.  Ponzillo walked up to the plaintiff, slapped his wallet and the bag from the convenience store out of his hands and yelled "you know him," referring to Easter.  Ponzillo told him to get on the ground, and when the plaintiff asked why, Ponzillo grabbed the back of the plaintiff's neck and threw him to the ground.  The plaintiff hit both his stomach and head when he fell.  Ponzillo then handcuffed the plaintiff and told him that if he knew Easter, "this would be his lucky day." While this was happening, McKnight, Hayes and Small were standing nearby and witnessed the interaction.

Pelosi arrived on the scene, and shortly thereafter, Lugo and Varrone arrived in a police van.  The plaintiff was unable to walk on his own and Ponzillo dragged him over to

3

the van where he was searched by Lugo.  The plaintiff was
wearing multiple pairs of pants, which were removed during
the search.  The plaintiff was then pushed into the van, and
in the process, something was inserted into his anus.  The
plaintiff screamed out and asked for medical attention.  The
plaintiff also told officers that he was schizophrenic.
Small, who was nearby, witnessed what happened and overheard
Pelosi saying to the other officers "get him, get him."
Small was then handcuffed and put in the back of the van
with the plaintiff.  He observed that the plaintiff was not
wearing any pants, had a cut on his head and was complaining
that his head hurt.  Lugo and Varrone refused the
plaintiff's request when he asked them to take him to the
hospital.

Ponzillo, McKnight, Hayes, Pelosi, Lugo and Varrone
dispute the plaintiff's characterization of the events and
offer a different account of the circumstances surrounding
the plaintiff's arrest.

Once the van arrived at the Waterbury Police
Department, Lugo or Varrone returned the plaintiff's pants.
The plaintiff and Small were then brought into the police
station and put into a holding cell with others.  Despite
the plaintiff's repeated requests, he was denied medical

4

attention.  Inside the cell, the plaintiff started to moan
and rock, prompting several of the others in the holding
cell to yell to the officers that the plaintiff needed
medical attention.  One officer walked by and stated "Not on
my shift.  Maybe next shift."  The plaintiff then vomited
and fainted.

Officers removed the plaintiff from the cell and put
him in another holding cell where he was held alone.  The
plaintiff was unable to walk, and the officers dragged the
plaintiff to the new cell.  When the plaintiff awoke, he
asked for medical attention.  In response, he was told via
the intercom to shut up or he would be tased.  Around 3:00
p.m., three officers entered the plaintiff's cell and
proceeded to beat him.  The plaintiff blacked out, and when
he awoke, he found that he was handcuffed to his bed.  The
plaintiff called out again for medical attention.  At least
three officers entered his cell and beat him a second time.

During at least part of the time during which the
plaintiff was being held, Dews, Tompkins, Hernandez,
Pedbereznak, Tito and Tanganelli were working in the police
station.  Dews, Tompkins and Hernandez worked until 2:00
p.m. that day, and the shift Pedbereznak, Tito and
Tanganelli's worked began at 2:00 p.m.  They were working in

proximity to the plaintiff and would have had an opportunity to interact with him.  Around 11:15 p.m., the plaintiff was processed and released from police custody based on his promise to appear.

The officers present a different account of the plaintiff's conduct and whether he vomited, requested medical attention and was handcuffed while in the cell.  The officers also deny that they used any force against the plaintiff.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. Of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning

whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia

Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  However, the inferences drawn in favor of the nonmovant must be supported by evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. COUNTS I and II- Unlawful Search and Seizure and Excessive Force

Claims under Article First, Section 7 of the Connecticut Constitution mirror claims for unlawful search and seizure and excessive force under 42 U.S.C. § 1983.  See State v. Davis, 283 Conn. 280, 305-06 (2007).  Absent a showing by the plaintiff that "substantive differences in the provisions would affect the outcome of the case," the claims are subject to the same analysis.  Cooper v. City of Hartford, No. 3:07-CV-823, 2009 WL 2163127, at *22 (D. Conn.

July 21, 2009).  Because the plaintiff has made no such
showing, the claims under the Connecticut Constitution and
§ 1983 are discussed concurrently in evaluating the
defendants' motion for summary judgment

### 1.  Unlawful Search and Seizure

#### a.  Ponzillo, McKnight and Hayes

The plaintiff claims that the initial stop and
subsequent search by Ponzillo, McKnight and Hayes constitute
an unlawful search and seizure.  The Supreme Court has held
that police officers "may in appropriate circumstances and
in an appropriate manner approach a person for purposes of
investigating possibly criminal behavior even though there
is not probable cause to make an arrest."  Terry v. State of
Ohio, 392 U.S. 1, 22 (1968).  In order to justify a
particular intrusion, "the police officer must be able to
point to specific and articulable facts which, taken
together with rational inferences from those facts,
reasonably warrant that intrusion."  Id. at 21.

Defendants Ponzillo, McKnight and Hayes argue that the
initial stop of the plaintiff was justified because they
thought the plaintiff looked very similar to the man,
Easter, for whom they were looking.  In addition to looking
like Easter, the plaintiff was located in the same area

where they suspected that Easter could be found, and he was dressed in clothing typical of the gang to which Easter belonged.  Their suspicions of possibly criminal behavior were heightened because they saw the plaintiff and another man, Small, allegedly drinking from a liquor bottle in front of a Day Care and Learning Center.  Based on these facts, the officers decided to further investigate.

The plaintiff avers that he looks nothing like Easter and was not drinking alcohol.  He claims that he was simply walking back from a local convenience store with Small and carrying a bag of candy.  There are genuine issues of material fact regarding the plaintiff's conduct at the time of the initial stop, and thus a genuine issue as to whether the stop was justified.

Ponzillo, McKnight and Hayes contend that, after detaining the plaintiff, they patted him down for weapons. The plaintiff contends that he was patted down after being handcuffed, and he claims that the search was unlawful.  The Supreme Court has recognized the need for law enforcement officers to protect themselves by conducting a search of a detained individual where they may lack probable cause for an arrest.  See Terry, 392 U.S. at 24.  In order for the search to be justified,

> the officer need not be absolutely certain that
> the individual is armed; the issue is whether a
> reasonably prudent man in the circumstances would
> be warranted in the belief that his safety or that
> of others was in danger. . . .  [I]n determining
> whether the officer acted reasonably in such
> circumstances, due weight must be given, not to
> his inchoate and unparticularized suspicion or
> 'hunch,' but to the specific reasonable inferences
> which he is entitled to draw from the facts in
> light of his experience.

Id. at 27 (internal citations omitted).

Ponzillo, McKnight and Hayes claim that when they approached the plaintiff and Small, the plaintiff and Small immediately stuck their hands in their pockets and were reluctant to remove them when asked to do so.  Based on this conduct, the location where they were found and their manner of dress, the officers decided to pat the plaintiff and Small down for weapons for their own safety.  The plaintiff does not specifically state that he did not put his hands in his pockets or that he was not reluctant to remove them.  However, based on the plaintiff's contention that he was innocently walking home from a local convenience store, there is a genuine issue of material fact as to whether the officers were justified in conducting the pat-down.  Therefore, the motion for summary judgment is being denied as to the unlawful search and seizure claims against Ponzillo, McKnight and Hayes.

11

### b.  Lugo, Varrone and Pelosi

The plaintiff claims that Lugo, Varrone and Pelosi are liable for failure to intervene to stop the unlawful search and seizure.  "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."  O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  It is undisputed that Lugo, Varrone and Pelosi were not present at the time of the initial seizure and search.  Therefore, they did not have a realistic opportunity to intercede and cannot be held liable for the original search and seizure by Ponzillo, McKnight and Hayes.

However, the plaintiff claims he was searched a second time, this time by Lugo, before being put into the police van.  The plaintiff claims that in the course of the search, his pants were taken off, exposing his naked buttocks and genitals.  While Lugo admits that she performed the search, she denies that the plaintiff's pants were taken off and that his buttocks and genitals were exposed.

12

Where "the sole justification of a search . . . is the
protection of the police officer and others nearby, . . .
[the search] must . . . be confined in scope to an intrusion
reasonably designed to discover guns, knives, clubs, or
other hidden instruments for the assault of the police
officer." <u>Terry</u>, 392 U.S. at 29.  The search the plaintiff
contends was performed here was not sufficiently confined in
scope.  Such a search would amount to a violation of the
plaintiff's constitutional rights, triggering the duty of
the other officers present at the time to intercede.  The
plaintiff contends that Pelosi and Varrone were present at
the time of this search.  There are genuine issues of
material fact regarding the scope of any search by Lugo and
whether Varrone and Pelosi had a reasonable opportunity to
intercede.  Therefore, the motion for summary judgment is
being denied as to the plaintiff's claim of an unlawful
search by Lugo and as to the claim for failure to intervene
by Varrone and Pelosi.

### 2.  Excessive Force

The plaintiff brings his claims of excessive force
under 42 U.S.C. § 1983 and Article First, Section 7 of the
Connecticut Constitution.  Article First, Section 7 protects
citizens against unreasonable searches and seizures, which

includes claims of unreasonable force used in the course of an arrest.  See Carey v. Maloney, 480 F. Supp. 2d 548, 561 (D. Conn. 2007).  Excessive force claims are subject to the Fourth Amendment's "objective reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 388 (1989).  "Police officers' application of force is excessive . . . if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent and motivation."  Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (internal citations and quotation marks omitted).

### a.  Ponzillo, McKnight and Hayes

The plaintiff alleges that Ponzillo, McKnight and Hayes used excessive force against him when Ponzillo forcefully took the plaintiff to the ground and McKnight and Hayes did not intervene to stop Ponzillo's actions.  Ponzillo denies using any force that could be considered excessive, including taking the plaintiff to the ground.  There is a genuine issue of material fact as to whether Ponzillo used any force against the plaintiff, and if he did, whether that force was reasonable in light of the circumstances.

The plaintiff does not claim that McKnight and Hayes personally used any force against him.  Rather he claims

14

that they are liable because they failed to intervene on his behalf.  An officer is liable for failure to intercede where the officer "observes excessive force is being used or has reason to know that it will be used."  <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001).  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  <u>Anderson</u>, 17 F.3d at 557.

McKnight and Hayes were present when Ponzillo allegedly used excessive force against the plaintiff.  There are genuine issues of material fact as to whether excessive force was used, creating the obligation on the part of McKnight and Hayes to intercede, and if so, whether McKnight and Hayes had a realistic opportunity to intercede. Therefore, the motion for summary judgment is being denied as to the claim for use of excessive force by Ponzillo, and as to the claim for failure to intervene by McKnight and Hayes.

### b.  Lugo, Varrone and Pelosi

The plaintiff contends that Lugo, Varrone and Pelosi used excessive force against him when putting him into the police van, claiming that he was hit in the head, shoulders

and arms prior to being put inside the van.  He claims that as he was being pushed into the van, he felt something enter his anus, and as he fell into the van he received cuts and bruises on his shins.  The plaintiff avers that Lugo, Varrone and Pelosi were all present at the police van and that at least one of them used excessive force against him while the others or other failed to intervene.  Lugo, Varrone and Pelosi all state that no force was used against the plaintiff and that nothing was inserted into his anus. Thus, these defendants have failed to show that there is no genuine issue of material fact as to whether they used excessive force against the plaintiff or failed to intervene when they had a duty to do so.  Therefore, the motion for summary judgment is being denied as to the plaintiff's claims for excessive force and/or failure to intervene against Lugo, Varrone and Pelosi.

### c.  Dews, Tompkins and Hernandez

The plaintiff claims that Dews, Tompkins and Hernandez used excessive force against him around 3:00 p.m. while he was at the police station. Dews, Tompkins and Hernandez's shifts ended at 2:00 p.m. that day, and the plaintiff has presented no evidence that they were at the station around 3:00 p.m.  Because there is no evidence that these officers

16

were present at the time the plaintiff claims excessive
force was used against him at the station, Dews, Tompkins
and Hernandez cannot be found liable for using excessive
force or failing to intervene.  Therefore, the motion for
summary judgment is being granted as to the excessive force
and/or failure to intervene claims against them.

### d.  Pedbereznak, Tito and Tanganelli

The plaintiff claims that after he was moved into a new
holding cell, three officers came into his cell, shackled
him and beat him with "big black nightsticks" across his
shoulders.  The Internal Investigation Report indicates that
Platoon "B" officers were likely the ones who shackled the
plaintiff in the cell.  Pedbereznak, Tito and Tanganelli all
serve on Platoon "B."  Based on this information, the
plaintiff contends that Pedbereznak, Tito and Tanganelli
beat him with nightsticks.  The officers deny beating the
plaintiff or witnessing anyone beat him.  Thus, these
defendants have failed to show that there is no genuine
issue of material fact as to whether they used excessive
force against the plaintiff and/or failed to intervene when
they had a duty to do so.  Therefore, the motion for summary
judgment is being denied as to the excessive force and/or
failure to intervene claim against these defendants.

17

### B. COUNT I- 42 U.S.C. § 1983- Denial of Medical Care

The plaintiff claims that all named officer defendants are liable for denying him medical treatment. "The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see also Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) (holding that the Fourth Amendment standard applies to a pre-trial detainee). "The official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). While the Eighth Amendment's protection of prisoners from cruel and unusual punishment due to "deliberate indifference to serious medical needs of prisoners" does not specifically apply, Revere, 463 U.S. at 243-44, the Court has found that the protections afforded under the Due Process Clause "are at least as great as the Eighth Amendment protections" in these situations. Id. at 244.

18

The standard for liability "incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the [official] acted with a sufficiently culpable state of mind."  <u>Smith v. Carpenter</u>, 316 F.3d 178, 183-84 (2d Cir. 2003) (internal citations and quotations omitted).

In the context of the Eighth Amendment, a serious medical condition is defined as a "condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).  In the present case, there is a genuine issue of material fact as to whether the plaintiff was in fact injured.  The plaintiff alleges that when Ponzillo took him to the ground, he hit his head on the concrete sidewalk.  The plaintiff avers that after he hit the ground, he was unable to walk and was dragged to the van by two of the officers.  He avers that once he was placed in the holding cell, he began to feel dizzy and subsequently vomited and fainted.  The plaintiff contends that his symptoms were consistent with a head injury, which should be regarded as a serious medical condition.  Additionally, the plaintiff states that even if

19

he had been drinking, as the defendants contend but he denies, the vomiting and loss of consciousness could have signaled alcohol poisoning, another serious medical condition.  Thus, there is a genuine issue of material fact as to whether the plaintiff was suffering from a serious medical condition.

In addition, there is a genuine issue of material fact regarding whether the officers acted with deliberate indifference.  In Weyant, the Second Circuit noted that deliberate indifference can be shown by evidence that the official acted with "reckless disregard for the substantial risk posed by the detainee's serious medical condition." 101 F.3d at 856.  A plaintiff must show "something more than mere negligence; but proof of intent is not required, for the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. (internal quotation marks and citations omitted). Instead, the official must be aware of facts from which he or she should have recognized the risk of substantial harm to the injured person.  Hathaway, 37 F.3d at 66.  Each of the named officer defendants interacted with the plaintiff for part of the time during which he alleges he was

suffering from a serious medical condition.  Additionally,
the plaintiff asserts that he requested medical help from
many of the officers with whom he interacted, including the
individual defendants.  Thus, these defendants have failed
to show that there is no genuine issue of material fact as
to whether they were deliberately indifferent to the
plaintiff's serious medical needs.  Therefore, the
defendants' motion for summary judgment is being denied as
to the claim for denial of medical care.

### C. 42 U.S.C. § 1983 Against the City of Waterbury and Gugliotti (Count III)

By bringing suit against Gugliotti in his official
capacity,[2] the plaintiff brings suit against the City of
Waterbury.  See Brandon v. Holt, 469 U.S. 464, 472 n.21
(1985) ("[O]fficial-capacity suits generally represent only
another way of pleading an action against an entity of which
an officer is an agent.").  Accordingly, the claims in Count

---

[2] The plaintiff seeks to substitute Neil O'Leary ("O'Leary")
in his official capacity for Gugliotti in his official
capacity.  O'Leary, rather than Gugliotti, was the Chief of
Police at the time of the incidents at issue here.  Such a
substitution is not necessary because a suit against either
in his official capacity is a suit against the City of
Waterbury.

III against the City of Waterbury and Chief Gugliotti in his official capacity are identical.[3]

"In [Monell v. Department of Social Services, 436 U.S. 658 (1978),] the Supreme Court ruled for the first time that municipalities were liable under § 1983 to be sued as 'persons' within the meaning of the statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007).

> A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior. . . . In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991) (citation omitted).

The plaintiff claims that the City of Waterbury is liable for the violation of his constitutional rights under

---

[3]The plaintiff sues each of the individual defendants in both their personal and official capacities.  Since official-capacity suits are another way of pleading an action against the entity of which the individual is an agent, Brandon, 469 U.S. at 472 n. 21, the official-capacity claims against the officers are identical to the Monell claims against the City of Waterbury and Gugliotti.  Thus, the official-capacity claims and the Monell claims are considered together.

two theories: (1) that the City of Waterbury maintained
three particular policies, practices and/or customs,
discussed below, that caused a violation of his
constitutional rights, and (2) that the City of Waterbury
had a policy, practice and/or custom of inadequately
training and supervising its officers which led to a
violation of his constitutional rights.

### 1. Deliberate Indifference to Constitutional Rights, Ignoring Prisoners' Medical Needs and Routinely Shackling Prisoners

"A municipality can be liable under § 1983 only where
its policies are the moving force behind the constitutional
violation." City of Canton, Ohio v. Harris, 489 U.S. 378,
389 (1989) (internal quotation marks and citation omitted).
The plaintiff claims that the City of Waterbury had a
policy, practice and/or custom of exhibiting deliberate
indifference to the constitutional rights of persons in the
City of Waterbury, ignoring prisoners' medical needs, and
routinely shackling prisoners.

In Monell, 436 U.S. 658, the Supreme Court established
that "[l]ocal governing bodies . . . can be sued directly
under [42 U.S.C.] § 1983 for monetary, declaratory, or
injunctive relief where, as here, the action that is alleged
to be unconstitutional implements or executes a policy

23

statement, ordinance, regulation, or decision officially
adopted and promulgated by that body's officers." Id. at
690.  Municipal liability is not limited only to instances
where the official policy or ordinance itself is
unconstitutional.  "Where a city's official policy is
constitutional, but the city causes its employees to apply
it unconstitutionally, such that the unconstitutional
application might itself be considered municipal policy, the
city may be held liable for its employees' unconstitutional
acts." Amnesty America v. Town of West Hartford, 361 F.3d
113, 125 (2d Cir. 2004).  In establishing a Monell claim,
however, a plaintiff cannot rely on "a single incident
alleged in a complaint, especially if it involved only
actors below the policy-making level." Ricciuti, 941 F.2d
at 123.  Similarly, showing that individual defendants, on a
single occasion, ignored the plaintiff's medical needs could
not establish that there was a municipal policy, practice
and/or custom of doing so.

As to the plaintiff's claim of a policy, practice or
custom of deliberate indifference to the constitutional
rights of persons in the City of Waterbury and ignoring
prisoners' medical needs, the plaintiff has pled that
violations of his constitutional rights, including

unreasonable search and seizure and failure to provide
medical care, "were committed as a result of the policies
and customs by Defendants City of Waterbury and Michael
Gugliotti Chief of Waterbury Police Department." (Am. Compl.
¶ 2.)   The defendants argue that the plaintiff cannot
produce any evidence in support of this claim.   The
plaintiff asserts in his Rule 56(a)(2) statement that the
City of Waterbury "failed to supervise and train its
officers" regarding medical treatment for detainees or
investigatory stops, searches and seizures, but points to no
evidence in support of his contention other than the
incident involving the plaintiff.

Under the circumstances here, showing that individual
defendants violated the plaintiff's constitutional rights to
be free from unlawful search and seizure and false arrest,
on a single occasion, could not establish the existence of a
policy, practice and/or custom of deliberate indifference to
the rights of persons in the City of Waterbury.   See
Ricciuti, 941 F.2d at 123.

As to the plaintiff's claim for denial of medical care,
the plaintiff has averred that groups of individual
defendants denied the plaintiff medical care after he made
repeated requests at various locations during the course of

25

his detention.  The plaintiff avers that he requested
medical attention from the two female officers who were
driving the wagon, once he had reached the holding cell
prior to vomiting, again after vomiting while being moved to
a different cell, and twice more between the cell change and
his eventual release at approximately 11:15 p.m.  Based on
the various times and locations of the plaintiff's requests,
spanning at least two different shifts at the Waterbury
police station, the denial of medical care claimed by the
plaintiff here was not a "single incident."  In addition,
the defendants have introduced no evidence regarding the
policies of the City of Waterbury regarding medical
procedures for detainees.  Therefore, the motion for
summary judgment is being denied with respect to the
plaintiff's claim that there was a custom, policy or
practice of ignoring prisoners' serious medical needs.

The plaintiff has presented evidence that the City of
Waterbury has a practice of shackling prisoners in its
custody.  To succeed on his Monell claim, however, the
plaintiff must establish (1) a violation of a constitutional
right and (2) a municipal policy, practice or custom that
led to the violation of that right.  See Monell, 436 U.S. at
694.  While courts have held that a constitutional violation

may exist where the shackling of an inmate is accompanied by excessive force, e.g. Gonzales v. City of New York, No. 98-CV-3084, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000), no court has held that shackling in and of itself is sufficient to establish a violation of an inmate's constitutional rights.  Therefore, the motion for summary judgment is being granted as to this claim because the plaintiff has not produced evidence of a constitutional violation.

Thus, the motion for summary judgment as to Count III is being denied as to the claim that the City of Waterbury had a custom, practice or policy of ignoring prisoners' medical needs, and it is being granted as to the claim that the City had a custom, practice or policy of deliberate indifference to constitutional rights and of shackling prisoners.

## 2. Failure to Train and Supervise

"[U]nder the so-called 'failure to train' theory, the Supreme Court has held that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . .  Only where a municipality's failure to train its employees in a relevant respect

27

evidences a deliberate indifference to the rights of its
inhabitants can such a shortcoming be properly thought of as
a city policy or custom that is actionable under § 1983."
Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007)
(internal quotation marks and citation omitted).  Under the
"failure to supervise" theory, a municipality may face
§ 1983 liability where it was "knowingly and deliberately
indifferent to the possibility that its police officers were
wont to violate the constitutional rights of arrestees" and
the plaintiff establishes that "deliberate indifference by
showing that the need for more or better supervision to
protect against constitutional violations was obvious, but
that [the defendant] made no meaningful attempt to forestall
or prevent the unconstitutional conduct."  Amnesty America
v. Town of West Hartford, 361 F.3d 113, 127 (2d Cir. 2004)
(internal citations and quotations omitted).

     The Second Circuit has identified three requirements
that must be satisfied before a municipality's failure to
train or supervise constitutes deliberate indifference:

> First, the plaintiff must show that a policymaker
> knows to a moral certainty that her employees will
> confront a given situation.  Second, the plaintiff
> must show that the situation either presents the
> employee with a difficult choice of the sort that
> training or supervision will make less difficult
> or that there is a history of employees
> mishandling the situation.  Finally, the plaintiff

must show that the wrong choice by the city
employee will frequently cause the deprivation of
a citizen's constitutional rights.  In addition,
at the summary judgment stage, plaintiffs must
identify a specific deficiency in the city's
training program and establish that that
deficiency is closely related to the ultimate
injury, such that it actually caused the
constitutional deprivation.

Id. (citations omitted) (internal quotation marks omitted);

see also Reynolds, 506 F.3d at 191-92 (discussing failure to

supervise Monell claim).

The plaintiff contends that the City of Waterbury had a

policy, practice and/or custom of inadequately training and

supervising its police officers concerning proper search and

seizure methods and concerning the constitutional

protections afforded its citizens, training and supervising

its police officers in the medical needs of prisoners, and

training and supervising its police officers in shackling

procedures and accurate reporting of shackled prisoners.

As to the first two areas, i.e. training and

supervision concerning proper search and seizure methods and

constitutional protections afforded its citizens and

concerning the medical needs of prisoners, the plaintiff has

not proffered any evidence with respect to the City's

training programs or any deficiency in any training program

or any evidence with respect to supervision of the City's

police officers other than the alleged misconduct in this case.  Specifically, the plaintiff points to the Waterbury Police Department's procedures for investigative stops and asserts that Ponzillo, McKnight and Hayes violated those procedures and their violation of those procedures was a result of the City's failure to train, and he points to his alleged injuries and his evidence that the officers were aware of those injuries and did nothing.

However, the Supreme Court has required that a "factfinder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 130 (2d Cir. 2004) (citing City of Canton, 489 U.S. at 390-92); see also Dwares v. City of New York, 985 F.2d 94, 101 (2d Cir. 1993) (allegation of an instance of police misconduct was insufficient to support an inference that the police had been improperly trained).

As to the plaintiff's claim with respect to training and supervising police officers in shackling procedures and accurate reporting of shackled prisoners, the plaintiff has produced the Internal Affairs Final Report, which concluded that the shackling of prisoners to their cell bed is a

fairly common practice and recommended that prisoners not be shackled to a cell bed without authorization from a sergeant or someone of higher rank and that shackling of a prisoner be documented by the desk sergeant.  However, as discussed above, the plaintiff has not produced evidence to support the conclusion that his constitutional rights were violated when he was shackled.

Therefore, the motion for summary judgment as to Count Three is being granted with respect to the claims for failure to train and supervise.

### D. False Arrest and False Imprisonment (Count IV)

Federal courts generally look to the law of the state where the arrest occurred when analyzing a claim for false arrest or false imprisonment.  Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004).  In Connecticut, both false arrest and false imprisonment are defined as "the unlawful restraint by one person on the physical liberty of another." Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996). To succeed on a false arrest claim under § 1983 the plaintiff must show that "(1) the defendant intentionally arrested him or had him arrested, (2) the plaintiff was aware of the arrest, (3) there was no consent to the arrest,

and (4) the arrest was not supported by probable cause."
Weinstock v. Wilk, 296 F. Supp. 2d 241, 246 (D. Conn. 2003).

### 1. Ponzillo, McKnight and Hayes

Ponzillo, McKnight and Hayes contend that probable cause existed to arrest the plaintiff because the plaintiff was drinking alcohol, acting in a aggressive manner and yelling abusive and profane language in front of a Day Care and Learning Center.  However, the plaintiff asserts that he was not drinking alcohol or acting in a disruptive manner. Because there is a dispute regarding the plaintiff's behavior at the time of his arrest, a genuine issue of material fact exists as to whether Ponzillo, McKnight and Hayes had probable cause to arrest the plaintiff. Therefore, the motion for summary judgment is being denied as to the plaintiff's false arrest and imprisonment claims against Ponzillo, McKnight and Hayes.

### 2. Lugo, Varrone and Pelosi

The plaintiff claims that Lugo, Varrone and Pelosi are liable for his allegedly false arrest because they did not intervene when his constitutional right to be free from false arrest was violated by Ponzillo, McKnight and Hayes. The plaintiff acknowledges that Lugo, Varrone and Pelosi arrived at the scene after he had already been handcuffed

and arrested by Ponzillo, McKnight and Hayes.  Because Lugo, Varrone and Pelosi were not present at the time of the arrest and did not witness whether there was probable cause, they did not have a realistic opportunity to intervene on the plaintiff's behalf.  Also, a police officer may reasonably rely on the representations of a fellow police officer that there is probable cause to make an arrest.  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006); Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002). Therefore, the motion for summary judgment is being granted as to the plaintiff's false arrest claims.

**E. COUNTS V and IX- Assault and Battery**

To prevail on a claim for assault and battery, the plaintiff must establish that the defendants applied force or violence to him and that the application of such force was unlawful.  Williams v. Lopes, 64 F. Supp. 2d 37, 47 (D. Conn. 1999); see Conn. Gen. Stat. § 53a-59.

**1. Ponzillo, McKnight and Hayes**

The plaintiff contends that while he was detained by Ponzillo, McKnight and Hayes, Ponzillo shoved him up against a fence and then threw him to the ground.  Ponzillo claims that he did not use any force that could be considered assault and battery.  Therefore, the motion for summary

33

judgment as to the claim against Ponzillo for assault and
battery is being denied because there are genuine issues of
material fact as to whether and how much force he used.

The plaintiff does not contend that McKnight and Hayes
personally used any force against him.  "A civil assault is
the intentional causing of imminent apprehension of harmful
or offensive contact in another."  Dewitt v. John Hancock
Mut. Life Ins. Co., 5 Conn. App. 590, 594 (1985).  "A
battery is a completed assault."  Hanson v. Hosp. of Saint
Raphael, No. CV030480365, 2007 WL 2317825, at *1 (Conn.
Super. July 20, 2007).  Therefore, the motion for summary
judgment is being granted as to the claim for assault and
battery against McKnight and Hayes.

### 2. Lugo, Varrone and Pelosi

The plaintiff contends that Lugo, Varrone and Pelosi
subjected him to assault and battery when putting him into
the police van.  He claims that he was hit in the head,
shoulders and arms prior to being put inside.  He further
claims that as he was being pushed into the van, he felt
something enter his anus, and as he fell into the van he
received cuts and bruises on his shins.  The plaintiff
places each of Lugo, Varrone and Pelosi at the van.  Lugo,
Varrone and Pelosi all state that no force was used against

34

the plaintiff and that nothing was inserted into his anus.
Thus, these defendants have failed to show that there is no
genuine issue of material fact as to whether they subjected
the plaintiff to assault and battery.  Therefore, the motion
for summary judgment is being denied as to the claim for
assault and battery as to Lugo, Varrone and Pelosi.

### 3. Dews, Tompkins and Hernandez

The plaintiff contends that Dews, Tompkins and
Hernandez subjected him to assault and battery.  However,
the plaintiff claims that the assault occurred around 3:00
p.m. while he was in custody at the police station.  The
shifts of Dews, Tompkins and Hernandez ended at 2:00 p.m.
that day, and the plaintiff has presented no evidence to
suggest they had not left the station at the time of the
assault.  Therefore, the motion for summary judgment is
being granted as to the assault and battery claim against
Dews, Tompkins and Hernandez.

### 4. Pedbereznak, Tito and Tanganelli

The plaintiff claims that after he was moved into a new
holding cell, three officers came into his cell, shackled
him, and beat him with "big black nightsticks" across his
shoulders.  The Internal Investigation Report indicates that
Platoon "B" officers were likely the ones who shackled the

35

plaintiff in the cell.  Pedbereznak, Tito and Tanganelli
serve on Platoon "B."  Based on this information, the
plaintiff contends that it was Pedbereznak, Tito and
Tanganelli who beat him with the nightsticks.  These
officers expressly deny beating the plaintiff or witnessing
anyone beat him.  Thus, these defendants have failed to show
that there is no genuine issue of material fact as to
whether Pedbereznak, Tito and Tanganelli subjected the
plaintiff to assault and battery.  Therefore, the motion for
summary judgment is being denied as to the assault and
battery claim against Pedbereznak, Tito and Tanganelli.

### F. COUNTS VI and X- Negligent Infliction of Emotional Distress by All Named Officer Defendants

The plaintiff has withdrawn his claims for negligent
infliction of emotional distress.  Therefore, the motion for
summary judgment on counts VI and X is being granted.

### G. COUNTS VII and XI- Intentional Infliction of Emotional Distress by All Named Officer Defendants

To prevail on his claim of intentional infliction of
emotional distress, the plaintiff must establish: (1) that
defendants intended to inflict emotional distress or knew or
should have known that their conduct would likely result in
emotional distress; (2) that the conduct was extreme and
outrageous; (3) that the conduct in question was the cause

36

of the plaintiff's distress; and (4) that the emotional distress experienced by the plaintiff was severe.  Appleton v. Bd. of Ed. of Town of Southington, 254 Conn. 205, 210 (2000).  The plaintiff has presented no evidence of emotional distress other than arguing that the plaintiff was asked about the topic at his deposition and essentially asserting that, based on the totality of the circumstances, the court could infer that the plaintiff would be emotionally distressed because of what happened to him.  That is insufficient to defeat a motion for summary judgment.  Therefore, the defendants' motion for summary judgment on the claim for intentional infliction of emotional distress is being granted.

### H. COUNT VIII- False Imprisonment Against Dews, Tompkins, Hernandez, Pedbereznak, Tito and Tanganelli

In assessing a claim for false imprisonment, federal courts generally look to the law of the state where the arrest occurred.  Davis, 364 F.3d at 433.  In Connecticut, both false arrest and false imprisonment are defined as "the unlawful restraint by one person on the physical liberty of another."  Outlaw, 43 Conn. App. at 392.

Dews, Tompkins, Hernandez, Pedbereznak, Tito and Tanganelli were not present at the time of the arrest and

only interacted with the plaintiff at the police station after he had already been arrested.  Officers who were not present at the original arrest will only be liable for false arrest or imprisonment if they have reason to know that such a false arrest was likely to occur.  <u>Little v. City of N.Y.,</u> 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007) (finding that an officer who was only responsible for processing arrest paperwork could not be held liable for false arrest).  Because Dews, Tompkins, Hernandez, Pedbereznak, Tito and Tanganelli only interacted with the plaintiff after he had been arrested and had no reason to know if he had been falsely arrested, they cannot be held liable for false imprisonment.  Therefore, the motion for summary judgment is being granted as to the false imprisonment claims against Dews, Tompkins, Hernandez, Pedbereznak, Tito and Tanganelli.

## I. Qualified Immunity

The defendants argue that the individual defendants in their individual capacities are entitled to qualified immunity on the plaintiff's constitutional claims.  Because summary judgment is being granted on a number of the defendants' claims, the court discusses qualified immunity only with respect to those constitutional claims against the

individual defendants in their individual capacities as to
which the motion for summary judgment is being denied.

"In general, public officials are entitled to qualified
immunity if (1) their conduct does not violate a clearly
established right, or (2) it was objectively reasonable for
them to believe that their acts did not violate those
rights.  The availability of the defense depends on whether
a reasonable officer could have believed his action to be
lawful, in light of clearly established law and the
information he possessed."  Weyant, 101 F.3d at 857-58
(internal quotation marks and citations omitted).

The right of individuals to be free from unlawful
search and seizure, to be free from the use of excessive
force, not to be subjected to deliberate indifference to a
serious medical need while being held as a prisoner, and to
be free from false arrest and false imprisonment were all
clearly established rights at the time of the incidents at
issue in this case.  The plaintiff's version of events and
the defendants' version of the events are materially
different.  The plaintiff's version of events could not
support a finding that it was objectively reasonable for the
individual defendants to believe that their acts could not
violate these clearly established rights.  Therefore, the

individual defendants are not entitled to summary judgment
on the issue of qualified immunity.

### IV.   CONCLUSION

For the reasons set forth above, the Defendants' Motion
for Summary Judgment is GRANTED in part and DENIED in part.
The following claims remain: (1) unlawful search and seizure
against Ponzillo, McKnight, Hayes, and Lugo, and failure to
intervene against Varrone and Pelosi, in violation of 42
U.S.C. § 1983 and the Connecticut Constitution; (2)
excessive force against Ponzillo, failure to intervene
against McKnight and Hayes, and excessive force and/or
failure to intervene against Lugo, Varrone, Pelosi,
Pedbereznak, Tito and Tanganelli in violation of 42 U.S.C.
§ 1983 and the Connecticut Constitution; (3) denial of
medical care against all the individual defendants in
violation of 42 U.S.C. § 1983 and the Connecticut
Constitution; (4) Monell claim against the City of Waterbury
based on a custom, policy or practice of ignoring serious
medical needs of prisoners, in violation of 42 U.S.C.
§ 1983; (5) false arrest against Ponzillo, McKnight and
Hayes in violation of 42 U.S.C. § 1983 and the Connecticut
Constitution; and (6) assault and battery against Ponzillo,
Lugo, Varrone, Pelosi, Pedbereznak, Tito and Tanganelli.

It is so ordered.

Dated this 9th day of March, 2012 at Hartford,

Connecticut.


　　　　　　　　　　　　　　／s／ AWT
　　　　　　　　　　　　Alvin W. Thompson
　　　　　　　United States District Judge